IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| JOSE HENAO,<br><br>        Plaintiff,<br><br>  vs.<br><br>HILTON GRAND VACATIONS<br>COMPANY, LLC,<br><br>        Defendant. | CIVIL NO. 16-00646 DKW-RLP<br><br>**ORDER GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT** |

## INTRODUCTION

Hilton Grand Vacations Company, LLC ("Hilton") seeks summary judgment on Plaintiff Jose Henao's single cause of action for termination in violation of the Hawaii Whistleblower Protection Act ("HWPA"), Haw. Rev. Stat. § 378-62. Henao alleges that Hilton unlawfully terminated his employment in July 2016 because he complained about age discrimination against "older sales agents" as well as Hilton's sales commission practices. Henao, however, was never terminated. Indeed, he does not dispute that *after* the date on which he claims he was terminated, he requested and was granted leave from his Hilton real estate sales position, pursuant to the Family Medical Leave Act, and, weeks later, requested that Hilton terminate him so that he could apply for unemployment insurance benefits. These

are not the actions of a terminated employee, and Hilton, even today, continues to employ Henao as a sales agent on personal leave. Having failed to raise a genuine issue of material fact with respect to his alleged termination, Henao is unable to satisfy the "adverse employment action" prerequisite to an HWPA claim, entitling Hilton to summary judgment.

## BACKGROUND

### I. Factual Background

Henao was hired by Hilton as a sales agent in 2012. He alleges that he was wrongfully terminated on July 4, 2016 in retaliation for complaining about age discrimination and certain Hilton sales commission practices. Complaint ¶ 6, Dkt. No. 1-1. According to Hilton, Henao was not terminated on July 4, 2016 or on any other date, remains employed as a sales executive, and is presently listed on Hilton's employee ledger as being out on personal leave status. Decl. of Julia Montenegro ¶ 4; Dkt. No. 18-1.

By early 2016, Henao complained that Hilton Sales Supervisor, Joshua Kannel, "was discriminating based upon age by firing the older sales agents." Decl. of Jose Henao ¶ 3; Dkt. No. 21-1. He also complained to both Kannel and Julia Montenegro, a senior Hilton human resources manager, that Hilton's minimum wage recovery draw program "resulted in illegal deductions from [Henao's] pay in violation of law[.]" Henao Decl. ¶ 2. Henao claims that on July 4, 2016, because

of his outspoken complaints, he was told by Kannel and Supervisor Bryan Economou "'pick up [his] personals and go home'. [He] was terminated." Henao Decl. ¶ 4. Henao "asked for clarification and was told 'the termination is final'." Henao Decl. ¶ 5.

Hilton denies that Henao was "terminated" at any time on July 4, 2016 or thereafter. Instead, according to Hilton's Montenegro—

> On July 4, 2016, Mr. Henao was advised that he had not met written and objective [sales] performance criteria for his job position and that this failure followed a validated final warning for previous poor performance. Mr. Henao was informed that [Hilton] HR would be contacting him shortly to discuss next steps.

Montenegro Decl. ¶ 6.a. On July 6, 2016, before making such further contact with Henao, Hilton received a note from Henao's doctor, placing him on leave for medical reasons, retroactively from July 1 through July 8, 2016. Montenegro Decl. ¶ 6.b.; *see also* Decl. of Kerry Dolan ¶ 3. On July 8, 2016, Hilton HR received a second note from Henao's doctor, stating that Henao's medical condition required him to be on leave until July 26, 2016. Dolan Decl. ¶ 4; Montenegro Decl. ¶ 6.c.

On July 11, 2016, after receiving these two notes from Henao's doctor, Hilton HR "decided not to take any action with regard to Mr. Henao's past poor job performance and to continue [his] employment upon his return from [Family Medical Leave Act ("FMLA")] leave." Montenegro Decl. ¶ 6.e. At nearly the same time, Leinaʻala Isa, Hilton's principal broker or broker in charge, requested

that the Hawaii Real Estate Commission place Henao's real estate license on inactive status. Henao Decl. ¶ 6, Ex. 1 (7/8/16 Real Estate License Change Form); Dkt. No. 21-2.

On July 12, 2016, Hilton HR contacted Henao by telephone to confirm that he would be on FMLA leave until July 26, 2016. Montenegro Decl. ¶ 6.f. According to Montenegro and Hilton HR's Leave Specialist Kerry Dolan, Henao stated that he expected to return to work on July 26. Montenegro Decl. ¶ 6.f.; Dolan Decl. ¶ 5. Following the telephone call, Hilton HR emailed the necessary FMLA paperwork to Henao. Montenegro Decl. ¶ 6.f.; Dolan Decl. ¶ 5.

At his request, Hilton HR met with Henao on July 19, 2016 to discuss his employment status. Montenegro describes the meeting, in part, as follows—

> During that meeting, Mr. Henao stated that he no longer wanted to work for [Hilton] and asked that he be terminated so that he could collect unemployment insurance for the remainder of 2016 (at which time he already was planning to retire). [Hilton] HR declined to terminate Mr. Henao's employment as requested, informed Mr. Henao that he was on FMLA leave, and showed him his tentative work schedule for his return to work upon the expiration of his FMLA leave. Mr. Henao repeatedly stated that he either deemed himself terminated or wished to be terminated. With equal frequency, [Hilton] HR told Mr. Henao that he was not terminated and that [Hilton] would not be terminating his employment as requested just so he could fraudulently collect unemployment insurance payments.

Montenegro Decl. ¶ 6.g. Henao does not refute Montenegro's account of the meeting.

The next day, Montenegro sent Henao a certified letter reconfirming that he remained a Hilton employee while on FMLA leave and enclosed a copy of his "return-to-work schedule," indicating his August and September 2016 work dates. Montenegro Decl. ¶ 6.h., Ex. A (7/20/16 Letter), Dkt. No. 18-4. The July 20, 2016 letter states—

> As discussed in our meeting yesterday, July 19, 2016, you continue to be employed as a team member of Hilton Grand Vacations. However, per your leave request received on July 5, 2016, you have been approved for Family Medical Leave starting from July 1st as stated in the note received from your physician. You are currently coded in our system under Leave of Absence.

Montenegro Decl. ¶ 6.h., Ex. A (7/20/16 Letter). Henao does not deny receipt of the July 20, 2016 certified letter. He acknowledges only that he "spoke and met with Hilton Human Resources Manager Julia Montenegro one time between June 1, 2016 to August 30, 2016." Henao Decl. ¶ 15.

On July 24, 2016, Henao applied for and was subsequently awarded unemployment insurance benefits from the State of Hawaii Department of Labor and Industrial Relations ("DLIR"). Henao Decl. ¶ 7, Ex. 2 (8/17/16 DLIR Decision), Dkt. No. 21-4. Montenegro asserts that when Hilton learned that Henao had applied for unemployment insurance benefits, "despite the fact that he was still employed with [Hilton], it was decided that any participation in [his] attempts to improperly obtain unemployment insurance benefits—either in support or

5

opposition of those attempts—was not in the best interests of Hilton. Thus, Hilton did not provide any information to the [DLIR] in connection with [Henao's] unemployment benefit claims." Suppl. Montenegro Decl. ¶ 7.

On July 25, 2016, Hilton HR called Henao to confirm that he would be returning to work the next day, as scheduled. Montenegro Decl. ¶ 6.i. According to Montenegro, Henao responded that he was not sure if he would return to work on July 26, and that he would be seeing his doctor before returning. Montenegro Decl. ¶ 6.i. Hilton HR requested that Henao contact the department immediately after speaking with his doctor so that Hilton could determine if his FMLA leave would be extended or whether he could work as scheduled. Montenegro states that Henao agreed to do so. Montenegro Decl. ¶ 6.i.

Henao called Hilton the next day, July 26, 2016, reporting that while he was not able to see his doctor that day because he was too sick, he had scheduled a new appointment for July 28. Montenegro Decl. ¶ 6.j. Henao assured Hilton HR that he would contact the office on that date to update his status. Montenegro Decl. ¶ 6.j.; Dolan Decl. ¶ 7. On July 29, 2016, Henao forwarded to Hilton HR a note from his doctor, dated July 26, 2016, indicating that Henao had, in fact, been released back to work on July 26, 2016, and that he had no illness or disability limiting his ability to work. Montenegro Decl. ¶ 6.k., Ex. B. (7/26/16 Physician Note), Dkt. No. 18-5. According to Montenegro, "[i]n forwarding that doctor's

note, Mr. Henao included a message stating: 'Enclosed is Dr. Elizabeth Quinn [sic] notice ending STD.' (short term disability)." Montenegro Decl. ¶ 6.l. When Hilton learned that Henao's FMLA leave had concluded as scheduled on July 26, 2016, Hilton HR called and left Henao a message to determine his return-to-work status. Montenegro Decl. ¶ 6.l. When Hilton HR did not receive a response from Henao on July 29, 2016, it both emailed and called him to discuss his plans, but did not receive a response to either communication. Montenegro Decl. ¶ 6.m.

Although Henao was scheduled to work, he did not come to work or call in for the three-day period of August 3, 4, and 5, 2016. Montenegro Decl. ¶ 6.n. Montenegro states that Henao "became terminable after his third 'no call/no show,' [however], [Hilton] HR elected to defer any termination decision and, instead, wrote Mr. Henao a letter in an attempt to engage with [him]." Montenegro Decl. ¶ 6.o. The August 9, 2016 letter states in part—

> This letter is to follow up on our last correspondence with you regarding your status and return to work. As you know, pursuant to the Domestic 555 schedule that was mailed and received by you on 7/26/16, you were scheduled to work on August 3, 4, 5, and 6 unless your FMLA leave was extended. Given that you did not extend your FMLA leave, we assumed you would show up to work as scheduled. You did not do so. Pursuant to our policies, your failure to appear for work as scheduled constitutes a no call/no show. Although your 3+ day no call/no show makes your employment terminable, we do not want to take that step without checking in with you one last time to see if you wish to extend your FMLA leave or take a non-FMLA personal leave of absence. *Accordingly, we have*

> *withheld taking any action regarding your employment status to*
> *give you a chance to contact us and make your intentions known.*

Montenegro Decl. ¶ 6.o., Ex. C (8/9/16 Letter), Dkt. No. 18-6 (emphasis added).

Because no decision had been made regarding his employment status, Hilton

offered to extend Henao's FMLA leave if he qualified or to provide him with

non-FMLA leave, as both described in the August 9 letter and as referenced in a

prior August 5 communication from Hilton HR—

> If you need further FMLA leave, you may remain eligible for
> such leave and we will be happy to work with you to set up
> further time off work. Similarly, if you would like to take an
> non-FMLA leave for up to a month, we will be happy to grant
> such a request. The key is communication, we cannot figure out
> how to accommodate your needs if you do not communicate
> with us and simply fail to show up for work. As we informed
> you on August 5, 2016 you are free to return to work, free to
> extend your FMLA leave, or free to take another form of leave.
> The choice is yours and we will work with you to effectuate your
> decision.

Montenegro Decl. ¶ 6.p., Ex. C (8/9/16 Letter). Montenegro concluded the August

9 letter with a request that Henao contact Hilton HR to make his future employment

plans known to the company. She stated —

> The one thing that cannot go on indefinitely is the current
> situation where your FMLA leave has expired, you have not
> requested an extension, you were scheduled to return to work,
> and you have engaged in a multi-day no call/no show. Again,
> we are requesting your response (i.e. some communication from
> you) as to whether you anticipate returning to work and when,
> whether you would like to extend your FMLA leave or whether
> you would like to take another form of leave. We will defer
> action on your no call/no show until Friday, August 26th so that

you have plenty of time to contact us and make your intentions
clear. We hope that you will either return to work or take this
opportunity to request further leave time.

Montenegro Decl. ¶ 6.q., Ex. C (8/9/16 Letter). Henao does not dispute that he

received Montenegro's August 9 letter and that he did not contact Hilton HR to

discuss his job status as requested. *See generally* Henao Decl.; *see also* Ex. D,

Henao's Response to First Request for Admissions ¶¶ 33–35, Dkt. No. 18-7.

According to Montenegro, no action has been taken against Henao, and he remains

on Hilton's employee ledger on personal leave status. Montenegro Decl. ¶ 6.s.

On August 10, 2016, Henao filed a Charge of Discrimination with the Equal

Employment Opportunity Commission ("EEOC") alleging age discrimination and

retaliation by Hilton. Henao Decl. ¶ 8, Ex. 3 (EEOC Charge), Dkt. No. 21-4.[1]

Henao's Charge states that Hilton "did not provide a reason for my termination on

July 4, 2016." Ex. 3 at 1 (EEOC Charge). Henao claims that after he filed his

Charge with the EEOC, Hilton "tried to cover up [his] termination" on August 12,

2016, by reactivating his real estate license with the Hawaii Real Estate

Commission. Henao Decl. ¶ 9; Ex. 4 (8/12/16 Real Estate License Change Form),

---

[1]Although Henao claims that he filed the EEOC Charge on August 5, 2016—when he signed and
dated it—the fax transmittal on the header of his Charge shows that it was, in fact, faxed to the
EEOC on August 10, 2016. The EEOC received the Charge that same day, August 10, 2016. "A
Charge is considered 'filed' when the EEOC receives it." *Kim v. Coach, Inc*., 2016 WL 544469,
at *5 (D. Haw. Feb. 9, 2016), *aff'd*, 692 F. App'x 481 (9th Cir. 2017) (citing *Sanchez v. Pac.
Powder Co*., 147 F.3d 1097, 1099 (9th Cir. 1998); *see also Buckley v. Univ. of Arkansas Bd. of
Trustees*, 780 F. Supp. 2d 827, 829 (E.D. Ark. 2011) ("A charge is filed with the Commission
upon receipt[.]") (citing 29 C.F.R. § 1601.13(a)(1)).

Dkt. No. 21-5.[2]   On August 16, 2016, Hilton again filed a request to change

Henao's license status to inactive.   Henao Decl. ¶ 10; Ex. 5 (8/16/16 Real Estate

License Change Form), Dkt. No. 21-6.[3]

Henao claims that he "was the top salesperson in May 2017 [sic] of 36 sales

agents," and that from "January 1, 2016 to June 30, 2016, [he] was the eighth highest

producer of all 36 sales agents."   Henao Decl. ¶¶ 12–13.   In support of his

contention that he was terminated, Henao asserts that "a number of [his] co-workers

heard from management that I was terminated on July 4, 2016.   My co-workers,

Carl Maybin and Charles Neal . . . understood I was terminated on July 4, 2016."[4]

Henao Decl. ¶ 11.

## II.   **Procedural Background**

On November 2, 2016, Henao filed his Complaint in state court alleging a

single count of retaliation in violation of the HWPA based upon his "reports of

violations of age discrimination laws and other laws."   Complaint ¶ 12, Dkt. No.

1-1.   The Complaint alleges that after he complained on April 8, 2016 "to

management about unlawful age discrimination because the Director of Sales had

---

[2] The form was signed and dated by Leinaʻala Isa on August 15, 2016.   Ex. 4 at 2 (8/12/16 Real Estate License Change Form).

[3] Although apparently signed by Leinaʻala Isa on August 16, 2016, the form was not received by the Hawaii Real Estate Commission until November 10, 2016.   Ex. 5 (8/16/16 Real Estate License Change Form).

[4] As discussed below, Hilton objects to the hearsay statements of Maybin and Neal contained in their respective declarations as improper under Federal Rule of Civil Procedure 56(c)(4).

been terminating older sales agents and replacing them with younger sales agents,"
Complaint ¶ 8, and "also complained about management taking sales commission
from sales agents to which management was not entitled," Complaint ¶ 9, he "was
terminated on July 4, 2016" in retaliation "for complaining about the aforesaid
violations of law." Complaint ¶¶ 7, 10. Hilton removed the case to federal court
on December 6, 2016. Notice of Removal, Dkt. No. 1.[5]

Hilton now moves for summary judgment, asserting that, because he is still
employed by Hilton, Henao suffered no adverse employment action, an essential
element of Henao's HWPA claim.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to
summary judgment "if the movant shows that there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter of law." The
moving party is entitled to judgment as a matter of law when the nonmoving party

---

[5]Henao has filed several additional administrative and civil actions against Hilton in connection
with his employment, including: (1) *Henao v. Hilton Grand Vacations Company, LLC* ("HGVC"),
Department of Labor & Industrial Relations, State of Hawaii, Wage Standards Division Docket
No. 011838; (2) *Henao v. HGVC*, Equal Employment Opportunity Commission, EEOC No.
486-2016-00344; (3) *Henao v. HGVC*, Department of Commerce & Consumer Affairs, Regulated
Industries Complaint Office, State of Hawaii, Case No. REC 2017-14-L; (4) *Henao v. HGVC*,
District Court of the First District (Honolulu Div.), Civil No. 1SC16-1-1531, filed August 9, 2016,
2016; (5) *Henao v. HGVC*, District Court of the First District (Honolulu Div.), Civil No.
1SC16-l-2429, filed December 6, 2016; and (6) *Henao v. HGVC*, District Court of the First
District (Honolulu Div.), Civil No. lSCl7-1-205, filed February 7, 2017. *See* Decl. of Andrew
Pepper ¶¶ 3–4, Dkt. No. 18-3.

fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (citation omitted). Once the moving party has satisfied its initial burden of production, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. *Id.* at 1103.

The nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth specific facts showing that there is a genuine issue for trial. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). At least some "'significant probative evidence tending to support the complaint'" must be produced. *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)); *see also Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000) ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to

show that there is a genuine issue for trial." *Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). *Accord Addisu*, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

"[C]ourts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). Nevertheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

## DISCUSSION

Henao concurs that termination is a necessary element of his HWPA claim. Although he insists that this prerequisite has been met as a result of Hilton's July 4, 2016 actions, the unrebutted record demonstrates that the Hilton supervisors with whom he met on July 4, 2016 could not have fired him because neither had the authority to do so. Equally important, Henao requested and received FMLA leave immediately following his purported termination, told Hilton HR on July 12 that he planned to return to work at the scheduled end of his leave, and, changing his mind,

requested on July 19 that Hilton terminate him to facilitate his collection of unemployment insurance benefits. Henao does not deny any of these events, none of which is consistent with his assertion of having been terminated on July 4,[6] and all of which are supported by the contemporaneous documentation offered by Hilton. In other words, Henao's attempt to manufacture a genuine issue of material fact with respect to his termination misses the mark, and Hilton is entitled to summary judgment.

## I.     Hilton Did Not Terminate Henao

Hilton argues that Henao's HWPA claim fails as a matter of law because he did not suffer the adverse employment action alleged in the Complaint: (1) he was not terminated on July 4, 2016; and (2) he remains an employee of Hilton in personal leave status as of the date of this Motion's adjudication.

### A.     Legal Framework

Under the HWPA, it is unlawful for an employer to discriminate against an employee because the employee "reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of [a] law, rule, ordinance, or regulation, adopted pursuant to

---

[6]Nor can the two declarations from Henao's co-workers save him. As explained further below, both are hearsay, and both contain incompetent evidence of Henao's alleged termination.

law of this State, a political subdivision of this State, or the United States."   HRS

§ 378-62(1)(A).

To establish a prima facie claim under the HWPA, Henao must prove that

(1) he engaged in a protected activity, (2) he was subjected to an adverse

employment action, and (3) the adverse employment action resulted because of his

participation in the protected activity.   *See Cambron v. Starwood Vacation*

*Ownership, Inc*., 945 F. Supp. 2d 1133, 1143 (D. Haw. 2013); *Griffin v. JTSI, Inc*.,

654 F. Supp. 2d 1122, 1130–32 (D. Haw. 2008) (citing *Crosby v. State Dep't of*

*Budget & Fin*., 76 Hawaiʻi 332, 876 P.2d 1300, 1310 (1994)).   Hilton moves for

summary judgment based on the lack of an adverse employment action.

"An adverse employment action is generally one that affects pay or status.   A

plaintiff bringing a Whistleblowers' Act claim must show an adverse employment

action that affected his or her compensation, terms, conditions, location, or

privileges of employment."   *Cambron*, 945 F. Supp. 2d at 1143 (citation and

quotation marks omitted); *see also Black v. Correa*, 2008 WL 3845230, at *11–12

(D. Haw. Aug. 18, 2008) (applying Title VII jurisprudence to HWPA claims).

The sole adverse employment action identified by Henao is his July 4, 2016

termination.   *See* Complaint ¶¶ 7, 12.   It is undisputed that a termination, if shown,

constitutes an adverse employment action that may form the basis of an HWPA

claim.

## B.    Whether Henao Was Terminated

Although Henao claims that he was told on July 4, 2016, by Supervisors Bryan Economou and Joshua Kannel to "pick up his personals and go home," and that "the termination is final," Henao Decl. ¶¶ 4–5, there is no dispute that neither Economou nor Kannel had the power or authority to terminate Henao, nor did termination fall within the scope of their employment.    Suppl. Montenegro Decl. ¶¶ 10–12.    Because neither Economou nor Kannel have "any human resources function in their jobs with Hilton," and, because "[d]ecisions regarding firing of employees working for Hilton in Hawaii are centralized and restricted to personnel working in [Hilton HR]," Suppl. Montenegro Decl. ¶¶ 8, 11, even drawing all reasonable inferences in favor of Henao, it is not plausible that Hilton "terminated" him on July 4, 2016.    Beyond the impossibility of Economou and/or Kannel firing Henao, Henao's purported termination is belied by his own conduct following the July 4, 2016 meeting.    As detailed below, Henao's post-July 4 FMLA leave request, his July 19 request to be terminated in order to collect unemployment benefits, and his July 29 notice to Hilton that his physician was releasing him back to work as of July 26 collectively demonstrate precisely the opposite.

### 1.    FMLA Leave Presumes Henao Was An Eligible Employee

Henao admits that he requested FMLA leave for acute sinusitis on July 5, 2016—the day after he claims he was fired.    *See* Ex. D, Henao's Response to First

Request for Admissions ¶ 25.   Hilton granted Henao's physician-supported request, which was retroactively effective from July 1 through July 8, 2016.   Hilton HR then received a second doctor's note from Henao, stating that Henao would not be able to return to work until July 26, 2016.   Montenegro Decl. ¶ 6.c.   Throughout the duration of Henao's FMLA leave—which essentially ran through most of the month of July 2016—Henao completed and returned the FMLA forms sent to him by Hilton HR in order to substantiate his leave requests.   Montenegro Decl. ¶ 6.d; *see also* Dolan Decl. ¶ 10.   In fact, based on his completed leave requests, Hilton HR decided not to take further action on Henao's employment status "with regard to [his] past poor job performance and to continue [his] employment upon his return from FMLA leave."   Montenegro Decl. ¶ 6.e.   On July 12, Hilton HR contacted Henao via telephone to confirm that he was on FMLA leave until July 26, at which point Henao confirmed what his doctor had already indicated—that he expected to return to work on July 26, 2016.   Montenegro Decl. ¶ 6.f.   On July 29, 2016, consistent with these communications, Henao forwarded a note from his doctor to Hilton HR, indicating that he had been released back to work effective July 26, ending his FMLA leave as scheduled.   Montenegro Decl. ¶ 6.k., Ex. B.   Henao does not dispute this account of his FMLA leave period.

Hilton argues that, because Henao requested and took leave under the FMLA under the circumstances described above, he had to have been an employee after

July 4, 2016, and could not, as a matter of law, have been "terminated." The Court

agrees. Indeed, the FMLA only allows qualifying *employees* to take unpaid leave

for up to 12 weeks each year provided they have worked for the covered employer

for 12 months. 29 U.S.C. § 2612(a).[7]

As the Ninth Circuit has explained, FMLA rights require an "employment

relationship."

> The FMLA entitles an "eligible employee" to twelve workweeks of leave for certain family and health-related situations. 29 U.S.C. § 2612. "The term 'eligible employee' means an employee who has been employed (i) for at least 12 months by the employer with respect to whom leave is requested. . . ." *Sullivan v. Dollar Tree Stores, Inc.,* 623 F.3d 770, 780 (9th Cir. 2010) (citing 29 U.S.C. § 2611(2)(A)) (internal quotation marks omitted). Therefore, FMLA rights and benefits are contingent upon the existence of an employment relationship. *See Smith v. BellSouth Telecomm., Inc.,* 273 F.3d 1303, 1311 (11th Cir. 2001) (the right to FMLA leave "obviously cannot be exercised after the termination of an employment relationship").

---

[7]The FMLA creates two interrelated substantive rights for employees—

> First, an employee has the right to take up to twelve weeks of leave for the reasons described [in the statute]. 29 U.S.C. § 2612(a). Second, an employee who takes FMLA leave has the right to be restored to his or her original position or to a position equivalent in benefits, pay, and conditions of employment upon return from leave. 29 U.S.C. § 2614(a). The FMLA does not entitle the employee to any rights, benefits, or positions they would not have been entitled to had they not taken leave. 29 U.S.C. § 2614(a)(3)(B). It simply guarantees that an employee's taking leave will not result in a loss of job security or in other adverse employment actions.

*Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132 (9th Cir. 2003) (some citations and footnote omitted); *see also Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001) (describing FMLA rights of employees).

*Walls v. Cent. Contra Costa Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011); *see also Walker v. NANA WorleyParsons, LLC*, 2013 WL 357571, at *5 (D. Alaska Jan. 28, 2013) (The court denied defendant's motion for summary judgment where "the parties disagree on whether [plaintiff] was an . . . employee [of defendant NWP] when she requested FMLA leave.   NWP alleges that based on its version of events, [plaintiff] had already been terminated during the April 9, 2009 meeting before she sought FMLA leave later that same day.   As the Ninth Circuit has held, the right to FMLA leave 'obviously cannot be exercised after the termination of an employment relationship.'") (quoting *Walls*, 653 F.3d at 965) (additional citations and footnotes omitted).

Because "FMLA rights and benefits are contingent upon the existence of an employment relationship," *Walls*, 653 F.3d at 966, and FMLA leave is available only to an "eligible employee," it follows that Henao could neither have requested nor been granted FMLA leave twice—retroactively from July 1 through July 8, and then, from July 8 through July 26, 2016—if he had, in fact, already been terminated by Hilton on July 4, 2016.   Henao offers no compelling factual or legal rebuttal to the plain language of the FMLA, the Ninth Circuit's holding in *Walls*, or his own

conduct following his professed firing.[8]   There is no genuine issue of fact that

Henao was an eligible employee who requested and took FMLA leave from his

employment with Hilton from July 1 through July 26, 2016.[9]

## 2.     Henao's Request For Termination Belies Prior Termination

Nor does Henao deny that he requested to be terminated at the July 19, 2016

meeting with Hilton HR officials, so that he could collect unemployment insurance

benefits pending his planned retirement at the end of 2016.   *See generally* Henao

Decl.; Montenegro Decl. ¶ 6.g.   According to Montenegro, Henao requested the

July 19 meeting to discuss his employment status, and during the meeting, "Henao

stated that *he no longer wanted to work for [Hilton] and asked that he be terminated*

---

[8]Henao's revisionist history "is blatantly contradicted by the record, so that no reasonable jury could believe it, [and the Court will] not adopt that version of the facts for the purposes of ruling on [Hilton's] motion for summary judgment."   *Scott*, 550 U.S. at 380.

[9]In his opposition brief, Henao bewilderingly asserts—without citation to legal authority or record evidence—that "[w]hether Plaintiff took FMLA leave is not dispositive of whether Plaintiff was terminated on July 4, 2016.   Plaintiff may not have fully understood when his FMLA benefits would stop *after being terminated*."   Mem. in Opp'n at 12–13, Dkt. No. 22 (emphasis added). Henao would not have been entitled to any FMLA benefits had he actually been terminated. There would have been no reason for him to apply and surely there would have been no reason for Hilton to approve it.   In fact, Hilton *could not* have approved it.   Thus, Henao's factually unsupported argument is misplaced.   *Cf. Nguyen v. McHugh*, 65 F. Supp. 3d 873, 887 (N.D. Cal. 2014) (noting that "bare factual assertions and conclusory statements unsupported by specific evidence have not been given any weight" in opposition to motion for summary judgment); *Darling v. Los Angeles Cty. Sheriff's Dep't,* 2015 WL 6560472, at *8 (C.D. Cal. Oct. 15, 2015), *aff'd*, No. 16-55132, 2017 WL 3432599 (9th Cir. Aug. 10, 2017) ("Most of plaintiff's assertions are not admissible because they are not made in a declaration or otherwise submitted in the form of actual evidence.").   In any event, although Henao's Declaration is silent with respect to his requests for FMLA leave, his discovery responses admit that: (1) on July 5, 2016, he notified Hilton HR of his need to take FMLA leave due to his acute sinusitis; (2) he took FMLA leave from July 1 through July 26, 2016; (3) his physician, Elizabeth Quinn, M.D., released him to return to work at Hilton as of July 26, 2016; and (4) his FMLA leave expired on July 26, 2016 and was not thereafter extended.   Ex. D, Henao's Response to First Request for Admissions ¶¶ 25–29, 31.

so that he could collect unemployment insurance for the remainder of 2016 (at which time he already was planning to retire)." Montenegro Decl. ¶ 6.g. (emphasis added). Henao offers no rebuttal to Montenegro's recounting of the meeting in which Hilton HR "*declined to terminate Mr. Henao's employment as requested*, informed [him] that he was on FMLA leave, and showed him his tentative work schedule for his return to work upon the expiration of his FMLA leave." Montenegro Decl. ¶ 6.g. (emphasis added). Hilton HR confirmed in a letter the following day that Henao remained a Hilton employee and that he was on FMLA leave. Montenegro Decl. ¶ 6.h.; Ex. A. (7/20/16 Letter).

Had Henao genuinely believed he had been terminated on July 4, two weeks earlier, there would have been no reason or need for him to request termination from Hilton on July 19. Indeed, had he been terminated then, there would have been no need for the July 19 meeting at all. To be clear, Henao offers no rejoinder to Montenegro's version of the July 19, 2016 meeting, and accordingly, raises no genuine issue of fact with respect to his request to be terminated on that date. Even drawing all *reasonable* inferences in favor of Henao,[10] there is no question of fact with respect to his current employment status.

_____

[10] *See, e.g., Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1175 n.104 (C.D. Cal. 2013) ("[Plaintiff's] subjective opinion [regarding his termination] is simply insufficient to raise triable issues of fact regarding pretext. 'Subjective personal judgments do not raise a genuine issue of

## II.    Henao Raises No Genuine Issue Of Fact In Opposition To The Motion

In opposition to Hilton's Motion, Henao presents the following three arguments, none of which is sufficient individually or collectively to deny Hilton summary judgment: (1) Hilton's principal broker requested that Henao's real estate license be placed in "inactive" status during his FMLA leave; (2) Henao was awarded unemployment benefits by the DLIR in August 2016; and (3) two of his Hilton co-workers "heard" their respective managers say that Henao was no longer employed by Hilton.   The Court addresses each below.

### A.    Inactivation Of Henao's Real Estate License

Henao argues that Hilton's temporary inactivation and reactivation of his real estate license shows that he was terminated on July 4, 2016.   Henao's theory is that the form signed by Hilton's broker, Ms. Isa, on July 8, and received by the Real Estate Commission on July 13, is "the most persuasive evidence that Plaintiff had been terminated," and that the "reason Defendant sent the form was to notify the commission that Plaintiff no longer worked for Defendant."   Mem. in Opp'n at 12.

Henao makes much of nothing.   The Real Estate Licensing Change Form nowhere indicates that Henao no longer worked for Hilton.   It simply requested that Henao's real estate license be placed on "inactive" status consistent with his

---

material fact[.]'") (quoting *Schuler v. Chronicle Broad. Co. Inc.*, 793 F.2d 1010, 1011 (9th Cir. 1986) (brackets omitted)).

placement on extended FMLA leave.   Ex. 1 at 1 (7/8/16 Real Estate License

Change Form).   In fact, Hilton points out that its policy *required* it to transfer any

sales agent on leave for more than a few days to inactive status, citing Haw. Admin.

R. §§ 16-99-3(b) and 16-99-5.1(c).   Reply at 5, Dkt. No. 23.   Inactive employees

have no need for and should not have an active sales license, and Henao identifies no

entitlement to an active real estate license while on leave status.   Thus, without

more, no reasonable inference of termination can be drawn from the placement of

Henao's real estate license into inactive status.

### B.      Henao's DLIR Award Does Not Demonstrate Termination

Henao points to the DLIR's August 17, 2016 decision approving his

application for unemployment insurance benefits as confirmation that he was, in

fact, "'terminated' and/or 'discharged' on July 4, 2016."   Once again, Henao makes

much of nothing.

Henao's DLIR application was uncontested.   Hilton did not participate in the

proceedings and did not provide DLIR with any information relating to Henao's

application for benefits.   Suppl. Montenegro Decl. ¶ 7.   DLIR itself confirms this

fact: DLIR's benefits decision was "based on the available information as the

employer did not provide additional information."   Ex. 2 (8/17/16 DLIR Decision).

In other words, any finding by DLIR that Henao's Hilton employment had been

terminated could only have come from Henao himself.   If DLIR chose to rely on

Henao alone in reaching such a conclusion, that is certainly the agency's prerogative. But that uncontested determination under the circumstances has no bearing and certainly no binding effect on this Court.

### C. The Declarations In Opposition To The Motion Do Not Raise Genuine Issues Of Fact, Even If Admissible

In support of his termination contention, Henao submits the Declarations of Carl Maybin and Charles Neal, "two witnesses who heard Plaintiff being fired on July 4, 2016." Mem. in Opp'n at 13. Both Declarations are based on hearsay. Even were they not, neither declaration is from a declarant competent to testify to the issue of termination, and neither declaration is even what it purports to be.

### 1. The Hearsay Declarations Are Not Admissible

Hilton objects to the admissibility of the Maybin and Neal Declarations. In resolving a summary judgment motion, courts may consider declarations "made on personal knowledge, *set[ting] out facts that would be admissible in evidence*, and show[ing] that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4)(emphasis added). Courts may not rely, for instance, on hearsay inadmissible under Fed.R.Evid. 802. *Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001).

Yet that is exactly what Henao asks this Court to do. Maybin and Neal, Henao's sales associates, both state that they "heard" different sales managers "say that Jose Henao was no longer employed by [Hilton]." Maybin Decl. ¶ 3; Neal

Decl. ¶ 3.  Henao offers these statements to prove that Hilton had terminated his employment.  That is classic hearsay.  Fed.R.Evid. 801(c); *see also Jacobsen v. Filler*, 790 F.2d 1362, 1367 (9th Cir. 1986) (deposition testimony about what others told the deponent is not based on personal knowledge and is inadmissible hearsay).

To the extent Henao argues that the proffered statements of Kannel and Kolodny, contained within the Maybin and Neal Declarations, are admissible as non-hearsay statements of a party opponent pursuant to Federal Rule of Evidence 801(d)(2),[11] he fails to meet his burden.[12]  Henao offers no evidence that Kannel or

---

[11]Admissions of a party opponent are not hearsay if they satisfy the following criteria:

The statement is offered against an opposing party and:

(A)   was made by the party in an individual or representative capacity;
(B)   is one the party manifested that it adopted or believed to be true;
(C)   was made by a person whom the party authorized to make a statement on the subject;
(D)   was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
(E)   was made by the party's coconspirator during and in furtherance of the conspiracy.

Fed.R.Evid. 801(d)(2).  As the proponent of the Maybin and Neal Declarations, Henao has the burden of establishing by a preponderance of the evidence that Rule 801(d)(2) applies.  *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987) (holding that proponent of hearsay must prove exception or exemption by preponderance of the evidence).

[12]*See, e.g., Fortino v. Quasar Co.*, 950 F.2d 389, 395 (7th Cir. 1991) (statement of one who had no role in the discharge "had no probative value and, being prejudicial, was inadmissible"); *Hill v. Spiegel, Inc.,* 708 F.2d 233, 237 (6th Cir. 1983) ("The mere fact that each of these men was a 'manager' within the expansive Spiegel organization is clearly insufficient to establish that matters bearing upon Hill's discharge were within the scope of their employment.  Their statements to Baker concerning Hill's discharge cannot, on this record, be considered as vicarious admissions by Spiegel."); *Garrett v. Lujan*, 799 F. Supp. 198, 201 (D.D.C. 1992) (statement by unidentified person inadmissible as hearsay because unclear "whether the person . . . was involved in the

Kolodny was authorized to make statements or bind Hilton on the subject of human resources, and neither sales manager himself was authorized to terminate salespersons, such as Henao. *See* Suppl. Montenegro Decl. ¶ 11 ("Human resource and independent job termination authority were not (and are not) within the scope of employment of Messrs. Kannel, Kolodny, or Economou.").

Because the Maybin and Neal statements that Henao relies upon constitute hearsay, and no exception to the hearsay rule applies, the statements may not be used to defeat Hilton's pursuit of summary judgment.

## 2.    Even If Admissible, The Declarations Are Unavailing

In addition to being inadmissible, the Declarations advanced by Henao are unreliable. Although Henao asserts that Maybin and Neal "heard Plaintiff being fired on July 4, 2016," neither "witness" actually says that. What Maybin actually declares is that: "On July 2, 2016 [sic], I heard Josh Kannel[] say that Jose Henao was no longer employed by Hilton Grand Vacations Club because he had 'numbered out' meaning that he did not meet his sales quota." Maybin Decl. ¶ 3. Similarly, Neal avers that: "On July 4, 2016, I heard Drew Kolodny, the sales manager for our team say that Jose Henao was no longer employed by Hilton Grand Vacations Club.

---

selection process"); *Back v. Nestle USA, Inc*., 2010 WL 7762630, at *3 (E.D. Ky. Aug. 13, 2010), *aff'd*, 694 F.3d 571 (6th Cir. 2012) ("Back has offered no proof that Shelburne was involved in Back's termination. Back has not even alleged that Shelburne was involved in his termination decision. Thus, . . . Back cannot introduce Shelburne's statements as an admission of a party-opponent.") (citations omitted).

Mr. Kolodny said that 'Jose is no longer with us. He numbered out.'" Neal Decl. ¶¶ 3–4. In other words, neither Declarant says he "heard Plaintiff being fired."

Equally important, declarations must be based on personal knowledge. *Boyd v. City of Oakland*, 458 F. Supp. 2d 1015, 1023 (N.D. Cal. 2006) (citations omitted); *see also Jackson v. Foodland Super Mkt., Ltd.*, 958 F. Supp. 2d 1133, 1140 (D. Haw. 2013) ("A district court will not consider an affidavit that is not based on personal knowledge."); *Bolla v. Univ. of Hawaii*, 2010 WL 5388008, at *12 (D. Haw. Dec. 16, 2010), *aff'd sub nom. Bolla v. McClain*, 469 F. App'x 531 (9th Cir. 2012) ("[A]ffidavits and declarations in support of or in opposition to a motion for summary judgment must be made on personal knowledge."). Here, neither one is.

Neither Maybin nor Neal have personal knowledge of Henao's purported termination. Maybin and Neal were Henao's peers, not his supervisors, and neither claims to have personally witnessed anything approximating Henao's termination. Whatever Kannel and Kolodny, Hilton's sales managers, may have said in front of Maybin or Neal regarding Henao could not itself have amounted to a termination, as they too lacked the authority to affect such an adverse employment action.[13] Suppl.

---

[13]*See also Sheik v. Bruno Enters., Inc.*, 1999 WL 325045, at *8 (N.D. Ind. Mar. 31, 1999) (granting employer summary judgment and finding no adverse employment action where uncontested affidavits established that only manager and district manager had the authority to discharge employees and that neither one actually discharged nor intended to discharge plaintiff); *see also id.* 1999 WL 325045, at *8 ("[T]hreats of discharge from employment do not amount to an adverse employment action," and the "voluntary termination of employment is not an adverse employment action . . . even when the employee mistakenly believes an employer's words are indicative of

Montenegro Decl. ¶ 12.   Any statement they may have made to the contrary would simply have been incorrect.   *Id.* ¶ 13 ("Any comments by Mr. Kannel, Mr. Kolodny, and/or Mr. Economou indicating or suggesting that Plaintiff's employment had been terminated in July of 2016 would have been factually erroneous (and erroneously speculative) as Plaintiff was not (and still has not been) terminated from employment").

In sum, the proffered Declarations are hearsay, are not based on personal knowledge, are inadmissible on summary judgment, and therefore cannot raise any genuine issue with respect to whether Henao was terminated.

## D.   **Summary**

Viewing the facts and drawing reasonable inferences in the light most favorable to Henao, the Court determines that he fails to raise a genuine issue of material fact sufficient to escape summary judgment on his HWPA claim.   It is well-established that, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

---

termination") (citations omitted).   As in the present matter, Henao's apparent "refusal to return to work or to even discuss the matter of returning to work with his employer cannot be considered an adverse employment action, even if he mistakenly interpreted his conversation with [Kannel and Economou] as a termination from his job."   1999 WL 325045, at *8.

trial.'" *Matsushita Elec. Industrial Co.*, 475 U.S. at 586–587 (footnote omitted). "That was the case here with regard to the factual issue whether [Henao was terminated on July 4, 2016, as alleged in the Complaint]. [Henao]'s version of events is so utterly discredited by the record that no reasonable jury could have believed him." *Scott*, 550 U.S. at 380.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court GRANTS Defendant's' Motion for Summary Judgment. Dkt. No. 17. The Clerk's Office is directed to close the case.

IT IS SO ORDERED.

DATED: October 6, 2017 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

*Henao v. Hilton Grand Vacations Company, LLC*, CV NO. 16-00646 DKW-RLP; **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

29